[No. D042054. Fourth Dist., Div. One. Sept. 18, 2003.]

DAVID RANDY ABATTI, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
THE PEOPLE, et al., Real Parties in Interest.

## COUNSEL

Plourd & Breeze and John W. Breeze for Petitioner.

Carmela F. Simoncini for Appellate Defenders, Inc., as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Charles C. Ragland, Deputy Attorney General, for Real Party in Interest the People of the State of California.

Liebert Cassidy Whitmore, J. Scott Tiedemann and Lucy Siraco for Real Party in Interest the City of Calexico.

## OPINION

**HUFFMAN, Acting P. J.**—In this criminal action, defendant David Randy Abatti petitions for a writ of mandate/prohibition directing respondent Superior Court of Imperial County (the court) to vacate its April 18, 2003 order denying his hybrid *Brady/Pitchess*[1] motion for review of a former police officer's records without conducting an in camera inspection, to restrain from proceeding with his case, and to enter an order directing the court to conduct an in camera review of the officer's personnel records to determine whether they contain any exculpatory information or material that may be used to impeach the former officer who is listed as a prosecution witness in this case.

Abatti specifically contends the court abused its discretion in refusing to review the "counseling memos" contained in the personnel records of the former police officer or, to at least make a record of the documents it considered in refusing his *Brady/Pitchess* motion. He also contends the five-year limitation on disclosure of information in such files (Evid. Code, § 1045, subd. (b)(1)) is not an absolute bar to disclosure of *Brady* information in those files, and that his counsel's declaration on "information and belief"

---

[1] *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194] (*Brady*); *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

was sufficient to show the materiality of those records. Abatti argues it was an error at law to deny his motion without first reviewing the former officer's personnel records.

The People, represented by the Attorney General's Office, counter that an in camera hearing was not warranted because Abatti failed to show materiality under either *Brady* or *Pitchess*, the 12-year-old counseling memos were not discoverable under *Pitchess*, and the trial court did not have an obligation to conduct an in camera review to seek out potential *Brady* material.[2]

The City of Calexico (City), representing the Calexico Police Department (PD) and City, essentially contends Abatti has failed to show the court committed "a clear case of abuse" or "a miscarriage of justice" in the court's ruling on Abatti's hybrid motion.

Appellate Defenders, Inc. (ADI), appearing as amicus curiae on behalf of Abatti, contends the court abused its discretion in denying Abatti's pretrial discovery motion because good cause and a plausible factual foundation for information in the former officer's records were shown, and the former officer was not required to be represented at the *Pitchess/Brady* proceeding where City appeared to assert the governmental privilege on his behalf.

We shall conclude the trial court abused its discretion in failing to find materiality and good cause for the information sought under the hybrid *Brady/Pitchess* motion in this case. Accordingly, we grant the petition, ordering the court to set aside its April 18, 2003 order, and to conduct an in camera review of the counseling memos of the former police officer in accordance with this opinion to ascertain whether they contain information required to be disclosed to Abatti under *Brady*.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 16, 2002, the People filed an information charging Abatti with the October 6, 2002 assault upon Danny Saiz with a deadly weapon, to wit, a vehicle, and by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)), with leaving the scene of an accident (Veh. Code,

---

[2] Although our Supreme Court in *Alford v. Superior Court* (2003) 29 Cal.4th 1033 [130 Cal.Rptr.2d 672, 63 P.3d 228] (*Alford*) has recently held that the People have no standing to be heard in the "special instance of third party discovery" provided by *Pitchess* proceedings (*id.* at pp. 1043–1046), we do not believe such holding bars the People's appearance in this case, where, as the background facts will show, the trial court asked the People's input on the hybrid motion before it and *Brady* material was requested. Further, Abatti has not objected to the People's participation in these proceedings. (See *Alford, supra,* 29 Cal.4th at pp. 1047–1057, fn. 8 (dis. opn. of Baxter, J.).)

§ 20002, subd. (a)), and with drawing or exhibiting a firearm (Pen. Code, § 417, subd. (a)(2)). The information also alleged that Abatti personally inflicted great bodily injury on Saiz during the commission of the assault within the meaning of Penal Code section 12022.7, subdivision (a).

On February 27, 2003, Abatti filed a *Pitchess* motion under Evidence Code section 1043 seeking the inspection and disclosure of certain peace officer personnel records of former Calexico City Police Officer Jesse Torres, who had been identified by the People as a person who would be called as a witness against Abatti at trial. By such motion, Abatti specifically sought "[a]ny and all records, documents, tape recordings, photographs, reports, internal affairs investigation memoranda, hearing transcripts, or other information or evidence relating to complaints by civilians, private citizens, law enforcement officers, or other public officials against [Torres] . . . relating to any history of misstating or fabricating facts, making material misstatements in reports concerning charged incidences or providing false information regarding any arrest or incidence in which the officer filed any report," in addition to the names, addresses and telephone number of those making any complaints, and all psychological records relating to Torres regarding his hiring or at any other time with the Calexico PD. The motion was made on grounds the personnel records of Torres contained evidence that was relevant to the issue of whether Torres "misstated or fabricated facts or made material misstatements in his report of the alleged contact with [Abatti] at the Imperial Valley Cycle Center [(the cycle center)] in December 2002[, and would] give rise to the discovery of admissible evidence in the form of other possible witnesses to [Torres's] propensities to engage in the conduct of misstating or fabricating facts."

In support of the motion, Abatti filed points and authorities and the declaration of his counsel. Counsel's declaration noted that the October 2002 assault on Saiz occurred in an unincorporated area outside the city limits of El Centro where Abatti allegedly ran Saiz off a dirt road and into a drainage ditch by striking Saiz's "four wheeled quad vehicle from behind," causing Saiz to suffer injuries, including a broken leg. According to discovery provided to Abatti, a person named Torres who currently works for the cycle center had told the police that Abatti had come into the center and had described the event that eventually led to his arrest. "In this interview, [Torres] claims that [Abatti] admitted being present at the scene where [Saiz's] four wheel vehicle was run into a drainage ditch. According to [Saiz, Abatti] was present at the scene and may have spoken to [Saiz] at the scene of the accident." Counsel states that when Torres was interviewed by a defense investigator he indicated he was a former police officer with the Imperial Police Department and with the Calexico PD, that he had left the Calexico PD "under some type of disability," and has worked at Western Auto and the cycle center since he left his law enforcement career.

On information and belief, counsel alleged Torres was considered to be a problem officer with the Calexico PD, that he had "deliberately embellished and/or fabricated facts and circumstances surrounding his arrests with the Calexico [PD, and] that none of the other police officers with the Calexico [PD] wanted anything to do with him and that he brought on many problems with [City] as a result of his actions." It was counsel's understanding that Torres was asked to leave the Calexico PD and "given an ultimatum that unless he left he would be either charged with misconduct or would have been fired." It was also counsel's belief that there were grievances and other complaints that had been filed either by fellow police officers or citizens regarding Torres, some of which had been investigated, the results of which were unknown to counsel who did not have access to such information. Based upon his interview with Abatti and his investigator's interview with Torres, counsel further believed that Torres "has embellished and misstated [facts] in his statements to the Attorney General's office regarding [Abatti's conduct and] statements to [him] at the [cycle center]." Counsel, therefore, sought an in camera inspection to determine whether there was any information in Torres's police officer personnel files that showed reports of misconduct or psychological records which would show he may have misstated or fabricated facts on previous occasions. The motion was served on the Attorney General, the Calexico PD, and City's attorney.

City responded for the Calexico PD in opposition to the *Pitchess* motion, noting Torres had worked as a police officer between October 1, 1983, and January 1, 1991, making his last date of employment with Calexico PD over 12 years ago. City thus claimed none of Torres's records were discoverable as they were not within the five-year limitation of Evidence Code section 1045, subdivision (b). He further asserted that Abatti's attorney had not alleged sufficient factual allegations to satisfy the good cause and materiality requirements of Evidence Code section 1043, and that no compelling need had been shown for any psychological records.

In supplemental points and authorities, the defense argued "[t]he fact . . . Torres is no longer a police officer with the Calexico [PD] does not bar discovery of his police officer personnel records and complaints that were made against him while he was a police officer [as] this information is discoverable under both Evidence Code Section 1045 and [*Brady*] pursuant to [*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129] (*City of Los Angeles*)]." The defense claimed Torres was "a material witness in this case because of the fact that he will testify to alleged admissions that [Abatti] made that he was guilty of the crime[s] charged. Mr. Abatti has denied making those statements and therefore the credibility of both Mr. Abatti and this ex-police officer will be a subject for which the jury will have to resolve at the time of trial. [Torres] should not come into court with an unwarranted veil of credibility if in fact, complaints have been made

regarding his credibility while he was a police officer with [City] and/or he was fired or subject to discipline as a result of those complaints."

At the March 28, 2003 hearing on the motion, defense counsel clarified that this was not the typical *Pitchess* request seeking police officer personnel records regarding a police officer's activities with a defendant in a case. Counsel represented that his investigator had discovered Torres "may have had some problems while he was a police officer with [City]." Because such information could impeach Torres at trial, counsel argued the information fell under *Brady* and was not barred by the five-year limitation as recognized in *City of Los Angeles*. Among other points, counsel also noted that *People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397 [67 Cal.Rptr.2d 910] (*Gremminger*) and *People v. Hustead* (1999) 74 Cal.App.4th 410 [87 Cal.Rptr.2d 875] (*Hustead*) supported Abatti's position that former police officer records are discoverable even though they do not relate to conduct as a police officer in the instant offense and the search of the records is not limited solely to an officer's propensity for violence, but also goes to information regarding the officer's credibility.

To determine whether the matter was moot, the court asked the custodian of the Calexico PD records, Lieutenant James Neujahr, to take the stand. Neujahr testified he had searched Torres's personnel records with Calexico PD, which he had brought with him that day, and "[a]s far as complaints go, there are no complaints." Neujahr explained, "Department policy requires that we destroy records involving complaints after five years. If they are a current employee of the Department, we'll maintain the records for a longer period of time. When a person is no longer a member of the Department, any records of complaints are destroyed after the five-year period."

On cross-examination, when asked if there were any disciplinary records in Torres's personnel files, Neujahr responded, "I'm aware—that's my problem, is definition, because I am aware of counseling memos. But those don't, by our range of discipline, rise to a disciplinary action, but there are memos addressing deficiencies."

After hearing further argument, the court denied the motion, stating: "In the moving papers, counsel says that he is informed and believes, and there are allegations that the witness was considered to be a problem officer. He is informed and believes that he deliberately embellished, fabricated facts and circumstances surrounding the arrest and that, quote, none of the other officers wanted anything to do with him. He brought many problems to the City. He was asked to leave. [¶] There is a declaration of conclusions and beliefs, but there [are] no facts alleged to support those conclusions or those beliefs. There is no source of information given. This is a bare declaration

supporting a request for records that, to the degree that they exist at all, are far beyond the five-year limitation provided in the act. That, coupled with the very bare declaration and supporting facts, leaves the Court to find there is no showing of materiality and the motion is denied."

Subsequently, on April 1, 2003, Abatti filed another motion for pretrial discovery under *Pitchess*, but tailored under *Brady*, for an in camera review for exculpatory evidence contained in the "counseling memos" in Torres's personnel records with the Calexico PD which had been testified about at the first *Pitchess* hearing. In addition to reiterating the facts stated in his declaration for the first motion, defense counsel then stated that as part of his investigation he had contacted "current members of the Calexico [PD] to find out what type of officer Mr. Torres was when he was a police officer with the Calexico [PD]. These officers have indicated to me that they do not want their names disclosed for fear of some type of retribution if their identities were disclosed regarding providing a defense attorney information regarding a former police officer with the department. Nevertheless, I have been informed and belie[ve] and allege herein that Mr. Torres deliberately embellished and or fabricated facts and circumstances surrounding his arrests with the Calexico [PD] and that none of the other police officers with the Calexico [PD] wanted anything to do with him and that he brought on many problems for [City] in terms of potential liability claims as a result of his actions and it is my understanding that Mr. Torres was asked to leave the Calexico [PD] and was given an ultimatum that unless he left he would be either charged with misconduct or would have been subject to some disciplinary proceeding. This is what's borne out during the testimony of the custodian of records of the Calexico [PD] when he testified on March 28, 2003. In my conversations with the Calexico [PD] officers that I spoke to, I am informed that these counseling memos will bear upon the credibility of [Torres] and whether he is a truthful individual. It is my understanding that he was accused of acts of moral turpitude that may go to his credibility as a police officer and that this was one of the reasons the Calexico [PD] had urged him to submit a resignation rather than being subject to a disciplinary proceeding."

No written response was filed to this second motion. At the April 16, 2003 hearing, City relied upon its response to the first motion and advised the court that the custodian of records was also present for the hearing. After hearing further argument, the court asked the deputy attorney general prosecuting the case to speak on behalf of the People regarding the merits of the motion. The prosecutor thought the declaration in support of the motion was vague, ambiguous and conclusional, without stating any specific instances of misconduct, lying or lack of credibility. He also noted that *Brady* was the prosecutor's obligation, not the court's, and represented the People did not believe there was anything in counsel's declaration to support review of the counseling memos for exculpatory information. After questioning whether

Torres should have been given notice of the motion, the court took the matter under submission, saying it was going to have to read *City of Los Angeles* because it was "a little bit confused on how we get *Pitchess* action to *Brady* material where *Brady* material was *Pitchess* relief."

On April 18, 2003, the trial judge ruled on the record: "The Court has read the cases cited and reread the moving papers. I even revisited the previous motion under *Pitchess*. It's my view that the motion does not state sufficient grounds for relief on a couple of grounds. [¶] First of all, this is sort of a hybrid, and the real party [in] interest, the holder of the privilege, is not represented as required under [Evidence Code section] 10[43]. And I don't think it's shown to be proper *Brady* material even if it were shown that there was some nexus between the third-party Calexico [PD] and the witness, therefore the motion is denied."

The court thereafter permitted defense counsel and the prosecutor to more fully expand on their positions regarding the motion. The trial judge then clarified for purposes of "appeal or writ" that he found "that the threshold has not been met for good cause. And trying to sort out this hybrid motion, both in terms of the good cause threshold and the ultimate information to be concluded, you have a[n Evidence Code section] 10[45] which counsel really is relying on, ultimately [that section] is defective on two bases. Number one is that the interested party is not served. Number two, it's beyond the Evidence Code section 10[45's] five-year limitation, it's presumptive. [¶] In using the *Brady* material to open up that time, you still are talking about asking for counseling memos which are, by definition, conclusions and investigations which are not discoverable."

Abatti filed the instant petition for a peremptory writ of mandate or prohibition on April 30, 2003. On May 7, 2003, we stayed the trial scheduled to begin May 20, 2003, pending further order of this court, and directed the real parties in interest to file informal responses to the petition. On May 9, 2003, we ordered the custodian of personnel records for the Calexico PD not to destroy Torres's personnel records pending disposition of this writ proceeding. After reviewing the informal responses from the City and the People, on May 28, 2003, we issued an order to show cause why the relief requested should not be granted. We additionally invited ADI and the California District Attorneys Association "to submit amici curiae briefs on or before 30 days from the [May 28, 2003] order," specifically giving the parties time to respond to any such amici curiae briefs.

The People requested oral argument on the matter and ADI filed an amicus curiae brief on behalf of Abatti on July 14, 2003, which has been responded to by the People and supplemented by Abatti.

## DISCUSSION

Before turning to our background discussion for a hybrid *Pitchess/Brady* motion and our analysis of the contentions in light of such principles, we note that ▇ writ review is appropriate because Abatti has sought relief from a discovery order which could undermine his right to present a defense because appellate remedies are not adequate to cure the erroneous denial of disclosure of information, and general guidelines appear to be necessary for the lower courts. (*People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 413 [92 Cal.Rptr.2d 829].) ▇ In reviewing the discovery order, we apply the abuse of discretion standard, "keeping in mind that '[t]rial courts are granted wide discretion when ruling on motions to discover police officer personnel records.' [Citation.]" (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1019 [101 Cal.Rptr.2d 379] (*CHP*).)

### A. *The Statutory Background for Pitchess Motions*

It is well settled that, "[I]n 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' [citation] through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*).) ▇ These Penal Code sections define "personnel records" and provide they are "confidential," but subject to discovery pursuant to certain procedures set out in the Evidence Code. (*City of Santa Cruz, supra,* at pp. 81–82.) Together, Evidence Code sections 1043 and 1045 set forth the specific procedures for discovery of such personnel records. In adopting such statutory scheme, the Legislature " 'not only reaffirmed but expanded' the principles of criminal discovery articulated" in *Pitchess.* (*City of Santa Cruz, supra,* 49 Cal.3d at p. 84.)

As the court in *CHP* noted, Evidence Code sections 1043 and 1045 "establish a two-step procedure for discovery of peace officer personnel records by a criminal defendant. First, section 1043 requires the defendant to file a written motion for discovery of peace officer personnel records [and written notice to the governmental agency which has custody of the records sought.[3]] The motion must include '[a] description of the type of records or information sought,' supported by 'affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information

---

[3] Subdivision (a) of Evidence Code section 1043 also provides that "[u]pon receipt of the notice the governmental agency served shall immediately notify the individual whose records are sought."

from the records.' [Citations.] . . . . [¶] The second step is reached after [a] defendant makes a showing of good cause for the discovery. [Citation.]" (*CHP, supra,* 84 Cal.App.4th at pp. 1019–1020.)

That second step is an in camera "examination of the [potentially relevant] records [in accordance with Evidence Code section 915] to determine whether they have any relevance to the issues presented in the current proceedings." (*City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1143 [79 Cal.Rptr.2d 624], fn. omitted; see *City of Los Angeles, supra,* 29 Cal.4th at p. 9; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*).) In addition to specific enumerated categories of exclusion of information,[4] Evidence Code section 1045 provides "general criteria to guide the court's determination [of relevance for disclosure] and insure that the privacy interests of the officers subject to the motion are protected."[5] (*City of Santa Cruz, supra,* 49 Cal.3d at p. 83.) Thus, it has been said that "[t]he relatively low threshold for discovery embodied in [Evidence Code] section 1043 is offset, in turn, by [Evidence Code] section 1045's protective provisions . . . ." (*City of Santa Cruz, supra,* 49 Cal.3d at p. 83.) Such "legislation was intended to balance the need of criminal defendants to relevant information and the legitimate concerns for confidentiality of police personnel records."[6] (*People v. Breaux* (1991) 1 Cal.4th 281, 312 [3 Cal.Rptr.2d 81, 821 P.2d 585].)

---

[4] Subdivision (b) of Evidence Code section 1045 specifically excludes from disclosure: "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit."

[5] Subdivision (c) of Evidence Code section 1045 provides that "where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records . . . which would not necessitate the disclosure of individual personnel records." Subdivision (d) of Evidence Code section 1045 provides for a discretionary protective order when the governmental agency "seasonably" requests and shows good cause for one, while subdivision (e) of that section mandates a protective order in every case where discovery is permitted under Evidence Code section 1043, limiting such discovery to use only in "a court proceeding pursuant to applicable law."

[6] As the court in *City of Santa Cruz,* stated: "The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under [Evidence Code] section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought—insure production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in [Evidence Code] section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure." (*City of Santa Cruz, supra,* 49

With respect to the "materiality" element of Evidence Code section 1043, subdivision (b)'s "good cause" requirement, the Supreme Court has observed that "a criminal defendant's right to discovery is based on the 'fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' [Citation.] *Pitchess* made it clear that 'an accused . . . may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial.' [Citation.] In contrast to the detailed showing required by some civil discovery statutes [citation], the requisite showing in a criminal matter 'may be satisfied by general allegations which establish some cause for discovery' other than a mere desire for all information in the possession of the prosecution. [Citation.] The information sought must, however, be 'requested with adequate specificity to preclude the possibility that defendant is engaging in a "fishing expedition." ' " (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 84–85.) The high court clarified in *City of Santa Cruz* that a showing of "good cause" under Evidence Code sections 1043 and 1045 requires a defendant "to demonstrate the relevance of the requested information by providing a 'specific factual scenario' which establishes a 'plausible factual foundation' for the allegations of officer misconduct committed in connection with defendant. [Citations.]" (*CHP, supra,* 84 Cal.App.4th at p. 1020.)

The court in *City of Santa Cruz* also held that because Evidence Code section 1043 contains no requirement of "personal knowledge" on the part of the declarant or affiant, a declaration by counsel on information and belief is sufficient to state facts to satisfy the "materiality" component of that section. (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 86–89.) The court further concluded that Evidence Code section 1043, subdivision (b) does not require personal knowledge of particular prior complaints or information, but only the reasonable belief that certain records may contain such earlier complaints or information. (*City of Santa Cruz, supra,* 49 Cal.3d at pp. 89–93.)

Once a court determines in camera that a defendant has shown the records contain "information [that] is relevant to the subject matter involved in the pending litigation," (*Mooc, supra,* 26 Cal.App.4th at p. 1226), or in essence that good cause and materiality have been shown, "[a]n accused is entitled to any ' " 'pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense* . . . .' " ' [Citation.]" (*People v. Gill* (1997) 60 Cal.App.4th 743, 750 [70 Cal.Rptr.2d 369].)

Cal.3d at p. 84; see also *People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254].)

## B. *Brady Disclosure*

Although a criminal defendant does not have a general constitutional right to discovery (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559 [51 L.Ed.2d 30, 42, 97 S.Ct. 837, 846]), under *Brady, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194, 1196], "the prosecution must disclose to the defense any evidence that is 'favorable to the accused' and is 'material' on the issue of either guilt or punishment. Failure to do so[, regardless of the good faith of the prosecution,] violates the accused's constitutional right to due process. [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at p. 7.) Generally, "evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian* (1995) 9 Cal.4th 535, 544 [37 Cal.Rptr.2d 446, 887 P.2d 527]; *Strickler v. Greene* (1999) 527 U.S. 263, 280–281 [144 L.Ed.2d 286, 301, 119 S.Ct. 1936, 1948].) "Evidence is material under the *Brady* standard 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at pp. 7–8.) "A 'reasonable probability' [is] 'a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*United States v. Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 494, 105 S.Ct. 3375, 3383]; *In re Sassounian, supra,* 9 Cal.4th at p. 544.) Impeachment of a witness can make the difference between acquittal and conviction, especially where credibility is the major issue in a case and evidence at trial will consist of opposing stories presented by the defense and the prosecution witnesses. (See *Giglio v. United States* (1972) 405 U.S. 150, 154 [31 L.Ed.2d 104, 108, 92 S.Ct. 763, 766]; *Napue v. Illinois* (1959) 360 U.S. 264, 269 [3 L.Ed.2d 1217, 1221, 79 S.Ct. 1173, 1177]; *United States v. Kiszewski* (2d Cir. 1989) 877 F.2d 210, 216.)

In *In re Brown* (1998) 17 Cal.4th 873 [72 Cal.Rptr.2d 698, 952 P.2d 715], our Supreme Court reiterated several factors crucial to a proper analysis of *Brady* "materiality" that had originally been set forth in *Bagley* and reemphasized in *Kyles v. Whitley* (1995) 514 U.S. 419, 434 [131 L.Ed.2d 490, 506, 115 S.Ct. 1555, 1565]. "First, '[a]lthough the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant.) [Citations.] *Bagley*'s touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' [Citation.] [¶] Second, 'it is not a sufficiency of evidence test. A defendant need not

demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.' [Citation.] [¶] . . . [¶] Fourth, while the tendency and force of undisclosed evidence is evaluated item by item, its cumulative effect for purposes of materiality must be considered collectively. [Citations.]" (*In re Brown, supra,* 17 Cal.4th at pp. 886–887.)

"Although *Brady* disclosure issues may arise 'in advance of,' 'during,' or 'after trial' [citation], the test is always the same. [Citation.] *Brady* materiality is a 'constitutional standard' required to ensure that nondisclosure will not 'result in the denial of defendant's [due process] right to a fair trial.' [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at p. 8.)

■ The constitutional duty under *Brady* requiring the prosecution to disclose exculpatory evidence to a criminal defendant is independent from its statutory duty under Penal Code section 1054.1, subdivision (e) (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304]), and applies even without a request by the accused. (*United States v. Agurs* (1976) 427 U.S. 97, 107 [49 L.Ed.2d 342, 351–352, 96 S.Ct. 2392, 2399].)

The scope of this prosecutorial obligation to disclose "extends beyond the contents of the prosecutor's case file and encompasses the duty to ascertain as well as divulge 'any favorable evidence known to the others acting on the government's behalf . . . .' [Citation.] Courts have thus consistently 'decline[d] "to draw a distinction between different agencies under the same government, focusing instead upon the 'prosecution team' which includes both investigative and prosecutorial personnel." ' [Citation.]" (*In re Brown, supra,* 17 Cal.4th at p. 879.) "The prosecution must disclose evidence that is actually or constructively in its possession or accessible to it. [Citation.] The important determination is whether the person or agency has been 'acting on the government's behalf' [citation] or 'assisting the government's case' [citation]." (*People v. Jordan* (2003) 108 Cal.App.4th 349, 358 [133 Cal.Rptr.2d 434] (*Jordan*).)

However, as we noted in *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305 [96 Cal.Rptr.2d 264] (*Barrett*), a prosecutor "[usually] does not have a duty to disclose exculpatory evidence or information to a defendant unless the prosecution team actually or constructively possesses that evidence or information. Thus, information possessed by an agency that

has no connection to the investigation or prosecution of the criminal charge against the defendant is not possessed by the prosecution team, and the prosecutor [generally] does not have the duty to search for or to disclose such material." (*Id.* at p. 1315.)

## C. *City of Los Angeles*

In *City of Los Angeles, supra,* 29 Cal.4th 1, the California Supreme Court considered the interplay between the requirements under *Brady* and the statutory *Pitchess* procedures, and recognized that they employ different standards of materiality for disclosure. (*Id.* at p. 7.) After noting the controlling legal principles of each, as we have above, the court in *City of Los Angeles* stated: "Unlike the high court's constitutional materiality standard in *Brady*, which tests whether evidence is material to the fairness of trial, a defendant seeking *Pitchess* disclosure must, under statutory law make a threshold showing of 'materiality.' [Citation.] Under *Pitchess*, a defendant need only show that the information sought is material 'to the subject matter involved in the pending litigation.' [Citation.] Because *Brady*'s constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint [or information] that meets *Brady*'s test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*. [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at p. 10.)

In upholding the constitutionality of Evidence Code section 1045, subdivision (b)(1), which was challenged as violating due process under *Brady*, the court in *City of Los Angeles* found that "no fundamental principles of justice are implicated" by the five-year limitation upon disclosure because "[j]ust as due process does not prohibit a law enforcement agency from [routinely] destroying records of citizen complaints that are more than five years old and whose exculpatory value to a specific case is not readily apparent, [Evidence Code] section 1045[, subdivision] (b)(1)'s five-year limitation on court-ordered discovery of such complaints does not, on its face, violate due process." In so holding, our high court noted it did "not suggest that a prosecutor who discovers facts underlying an old complaint of officer misconduct, records of which have been destroyed, has no *Brady* disclosure obligation." (*City of Los Angeles, supra,* 29 Cal.4th at pp. 11–12.) It also noted that the Attorney General, appearing as amicus curiae in that case, agreed with such assessment that, "regardless of whether records have been destroyed, the prosecutor still has a duty to seek and assess such information and to disclose it if it is constitutionally material." (*Ibid.*, fn. omitted.)

The court in *City of Los Angeles* further found that the five-year statutory time limitation of Evidence Code section 1045, subdivision (b)(1) was not an absolute bar to disclosure. (*City of Los Angeles, supra,* 29 Cal.4th

at p. 13.) The court reasoned that this was so because "[o]ur state statutory scheme allowing defense discovery of certain officer personnel records creates both a broader and lower threshold for disclosure than does the high court's decision in *Brady* .... Unlike, *Brady*, California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial [citation], that is, 'all information pertinent to the defense' [citation]." (*Id.* at p. 14.) The court agreed with the Attorney General that the " ' "*Pitchess* process" operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information.' " (*Ibid.*) The court noted it had "recently explained in [*Mooc, supra,* 26 Cal.4th at p. 1225, that] the *Pitchess* 'procedural mechanism for criminal defense discovery . . . must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial.' [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at p. 14.)

Our high court found instructive the United States Supreme Court's decision in *Pennsylvania v. Ritchie* (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989] (*Ritchie*), which dealt with trial court review of "information that (like police officer personnel records) enjoys a 'qualified statutory confidentiality' to determine whether it include[d] material exculpatory evidence subject to disclosure under *Brady*. . . ." (*City of Los Angeles, supra,* 29 Cal.4th at p. 14.) The court explained: "In *Ritchie*, the defendant, who was charged with molesting his 13-year-old daughter, sought disclosure of confidential reports of the protective services agency that had investigated the charges. A state appellate court directed the trial court to review the file in chambers, disclose the daughter's statements about the incidents, and allow defense counsel access to the full file for the limited purpose of arguing the relevance of those statements. The prosecution challenged that ruling. The Pennsylvania Supreme Court held that Ritchie's attorney was entitled to search the *full file* for any useful evidence. [Citation.] The United States Supreme Court disagreed, but it also rejected the prosecution's contention that because the information in question was privileged under a statute, in chambers review of that information by the trial court was impermissible. [Citation.] [¶] The high court noted that Pennsylvania law contemplated situations when disclosure of the privileged information would occur, such as when the protective services agency was 'directed to do so by court order.' [Citation.] Thus, Ritchie was 'entitled to have the [protective services agency] file reviewed by the trial court' to ascertain whether it contained evidence that 'probably would have changed the outcome of [Ritchie's] trial.' [Citation.] The court stressed, however, that Ritchie could not 'require the trial court to search through the [agency's] file without first establishing a basis for his claim that it contains *material* evidence' [citation], that is evidence that could determine the trial's

outcome, thus satisfying the materiality standard of *Brady*. . . ." (*City of Los Angeles, supra,* 29 Cal.4th at pp. 14–15.)

The court in *City of Los Angeles* found that "[u]nder *Ritchie*, a trial court that in response to a criminal defendant's discovery motion undertakes an in chambers review of confidential documents can, if the documents contain information whose use at trial could be dispositive on either guilt or punishment, order their disclosure. [Citation.]" (*Id.* at p. 15.) In a footnote, the court clarified that it was not suggesting that trial courts "must routinely review information that is contained in peace officer personnel files and is more than five years old to ascertain whether *Brady* . . . requires its disclosure." (*Id.* at p. 15, fn. 3.)

In Justice Brown's concurring opinion in *City of Los Angeles*, she noted that reliance on *Ritchie* for trial court in camera review of confidential peace officer records for *Brady* material would be misplaced if "a prosecutor, seeking to comply with *Brady*, to review the personnel records of a police officer who is a witness in a criminal case," were permitted access to such files under some exception to the *Pitchess* procedures. (*City of Los Angeles, supra,* 29 Cal.4th at p. 17 (conc. opn. of Brown, J.).) Recently our Supreme Court in *Alford* confirmed that the prosecutor, as well as the defendant, must comply with the statutory *Pitchess* requirements for disclosure of information contained in confidential peace officer records. (*Alford, supra,* 29 Cal.4th at p. 1046.)

D. *Application of These Principles to This Case*

Before applying the above principles to the instant case, we address several matters raised by the court's reasons for its ruling and the appellate arguments of the parties. In addition to finding no materiality under either *Brady* or *Pitchess* for disclosure of the counseling memos in former Officer Torres's personnel files had been shown, the court also found the fact Torres had not been given notice of the motion was fatal and questioned whether the fact he was not a currently employed police officer had any bearing on the matter.

 As to notice, Evidence Code section 1043 requires written notice of a motion to produce records on the agency who holds the records, which in this case was the Calexico PD. That notice was accomplished by service of the two *Pitchess* motions upon City. However, Evidence Code section 1043 also mandates that the agency must notify the individual whose records are sought, and specifies that without such notice, no hearing shall be held. (Evid. Code, § 1043, subds. (a) & (c).) In *City and County of San Francisco v. Superior Court* (1993) 21 Cal.App.4th 1031 [27 Cal.Rptr.2d 201] (hereafter *CCSF*), the court noted it had previously reviewed the legislative history of

Penal Code section 832.5 et seq. concerning the confidentiality of peace officer records and Evidence Code section 1043 et seq. regarding the *Pitchess* procedures for disclosure of information in those records, and found that "in addition to its purpose of insuring preservation of records of citizen complaints, the Legislature was also careful to give the employing agency and the peace officer ' "the right to disclose any information concerning the officer or complaints or investigations . . . in both criminal and civil proceedings." ' [Citation.] Such a right would be nullified if a hearing on the question of disclosure could be held absent notice to the individual whose records were involved." (*CCSF, supra,* 21 Cal.App.4th at pp. 1034–1035, fn. omitted.) ▪ Both the individual officer and the law enforcement agency are entitled to claim the confidential personnel records privilege of Penal Code section 832.7. (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1430 [44 Cal.Rptr.2d 532].)

Here, the court heard and denied Abatti's first *Pitchess* motion without concern whether Torres had been served. Although the court mentioned that the lack of notice to Torres was fatal to Abatti's second hybrid *Pitchess/Brady* motion, it nevertheless heard the matter even though City, which represented the Calexico PD, had not fulfilled its mandated duty to give Torres notice under Evidence Code section 1043, subdivision (a). Before the trial court conducts the in camera hearing we order below, the court should thus ensure that City has given Torres notice of that hearing.

Additionally, regarding the court's concern that Torres is not a current police officer, as the court in *Davis v. City of Sacramento* (1994) 24 Cal.App.4th 393 [29 Cal.Rptr.2d 232] noted, "[b]ecause personnel records of a particular officer are presumably generated while the officer is employed by the police department, they are '[r]ecords of peace officers.' They do not cease being such after the officer's retirement [or leave from employment]." (*Id.* at p. 400; see also *Gremminger, supra,* 58 Cal.App.4th at p. 407 [former police officer's records older than five years may be discoverable under Evidence Code section 1043 et seq.].)

As to the People's claim the agency from which the records are sought are not part of the prosecution team for which they have a *Brady* duty to disclose, we are mindful that this court in *Barrett, supra,* 80 Cal.App.4th 1305 has previously held the prosecution has no duty of disclosure under *Brady* for records in the hands of third party agencies not considered part of the prosecution team and that traditional third party discovery tools must be used to obtain review of records kept in those files. (*Id.* at p. 1318.) However, because the *Pitchess* procedure is the sole means by which information in confidential peace officer files can be obtained (*Jordan, supra,* 108 Cal.App.4th at p. 360, citing *Garden Grove Police Department v. Superior*

*Court* (2001) 89 Cal.App.4th 430 [107 Cal.Rptr.2d 642]), the preclusion of review from the personnel records of a peace officer who may be a material prosecution witness because the law enforcement agency holding the files is technically not on the prosecution team in this case would defeat the rights of a defendant to exculpatory evidence.

■ Further, the question before us does not involve the prosecutorial duty to disclose. As the court in *Ritchie* noted, a defendant has a due process right to gain access to material exculpatory evidence for the preparation of a defense. (*Ritchie, supra,* 480 U.S. 39.) Similar to the circumstances in *Ritchie*, the records sought in this case are confidential but available by court order if they are material to the issues in the pending case. The difference between *Ritchie* and this case is that California has a legislatively established, exclusive method for gaining access to police officer personnel records for discovery of such exculpatory material—the so-called *Pitchess* procedures previously discussed. (See *City of Los Angeles, supra,* 29 Cal.4th at pp. 14–15.) The real question in this case is whether the court correctly followed those procedures to determine whether the subject police officer files here contained matters which would meet the *Brady* test of materiality.

To answer this, we turn to our application of the above principles regarding *Pitchess, Brady,* and in *City of Los Angeles* to the instant case. Having done so, we are satisfied Abatti has established sufficient materiality under *Brady* or good cause under *Pitchess* for the information requested to trigger an in camera review and, therefore, hold the court failed to apply the proper standards when it refused to conduct such an inspection.

Abatti was charged with assault with a deadly weapon, to wit, a vehicle, which he allegedly used to strike the back of Saiz's vehicle and run him off a dirt road into a drainage ditch causing him injuries. As noted above, defense counsel's declaration on information and belief showed Torres, a former police officer, was on the prosecution witness list for trial and, if called, would testify to certain admissions that were allegedly made by Abatti regarding his presence at the crime scene which would incriminate him. Because Abatti was claiming he was not present at the crime scene and had not made those admissions to Torres, counsel's declaration alleged Torres had lied in his statements to police or prosecution investigators about his conversation with Abatti at the cycle center regarding Abatti's presence at the scene of the crime. Counsel represented that Torres had also lied when he had told Abatti's investigator he had left his law enforcement employment with City due to a disability, because counsel had information from various current Calexico police officers, who did not want their identities disclosed for fear of retribution, that the counseling memos will show Torres was asked to resign from his employment with the Calexico PD for accusations of acts of moral

turpitude rather than face disciplinary proceedings or charges of misconduct. The unnamed police officers had also told counsel that Torres had deliberately embellished and or fabricated facts and circumstances surrounding his arrests with the Calexico PD, that none of the other officers wanted anything to do with Torres, and Torres had brought many problems to the Calexico PD that could cause potential liability claims as a result of his conduct. ▉ Counsel averred such information in the counseling memos of prior acts of dishonesty involved in falsely reporting or embellishing the facts and circumstances surrounding his arrests for the Calexico PD would show Torres's character, habit and custom of dishonesty and bear on his credibility which was relevant to whether Torres had made a false report or embellished his conversation with Abatti to the police or prosecution investigators regarding the instant crime.[7] Thus, the declarations established a "plausible factual foundation" for allegations Torres was untruthful in his report of the encounter with Abatti to the police or prosecution, put the court on notice Torres's credibility would likely be an issue at trial, and articulated a valid theory of how the requested information might be admissible, i.e., as impeachment evidence. (*City of Santa Cruz, supra,* 49 Cal.3d at p. 86.) On this record Abatti adequately met the "relatively low" threshold showing of good cause under *Pitchess* for an in camera hearing. (Evid. Code, § 1043, subd. (b)(3); *City of Santa Cruz, supra,* 49 Cal.3d at pp. 85–86; *People v. Memro, supra,* 38 Cal.3d at pp. 682–683; *Hustead, supra,* 74 Cal.App.4th at pp. 416–418; *People v. Gill, supra,* 60 Cal.App.4th at p. 750; *Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 28–33 [239 Cal.Rptr. 264].) Because the evidence sought by Abatti to impeach former police officer Torres, who will testify to admissions by Abatti that he was present at the crime scene which would corroborate the victim's story versus Abatti's at trial, could make the difference between Abatti's guilt or innocence as determined by a jury, we believe Abatti has also shown that such information would be favorable and material under *Brady*.[8] (See *City of Los Angeles, supra,* 29 Cal.4th at pp. 14–15.)

---

[7] Abatti was "not required to furnish additional 'foundational facts' about the information he sought in his motion. [Citation.] Since [he] did not have access to [the counseling memos], he was not in a position to know whether [the information in them] in fact established the custom, habit, intent, motive or plan which he alleged. [Citation.] To require specificity in this regard would place an accused in the Catch-22 position of having to allege with particularity the very information he is seeking. Neither the Evidence Code nor *Pitchess* was intended to be applied in this manner." (*People v. Memro* (1985) 38 Cal.3d 658, 684 [214 Cal.Rptr. 832, 700 P.2d 446]; see also *City of Santa Cruz, supra,* 49 Cal.3d at pp. 91–92.)

[8] Contrary to the People's argument that because other witnesses independent of Torres can testify to Abatti's presence at the scene of the crime Torres cannot be considered a material witness, the crucial factors to a proper *Brady* analysis of "materiality" set out in *In re Brown, supra,* 17 Cal.4th 873 would find otherwise.

Because the trial court found otherwise based on what it perceived was an improper declaration based on information and belief of counsel that did not ask for discoverable information under Evidence Code section 1045, it abused its discretion in denying Abatti's *Pitchess/Brady* motion without conducting an in camera hearing to examine the counseling memos in accordance with Evidence Code section 915 to determine whether they contain information relevant to the issues presented in this case. (*City of Los Angeles, supra,* 29 Cal.4th at p. 9; *Mooc, supra,* 26 Cal.4th at p. 1229; *City of San Jose v. Superior Court, supra,* 67 Cal.App.4th at p. 1143.) As noted above, there is no requirement that the declaration in support of a *Pitchess/Brady* motion be made on the "personal knowledge" of the declarant. (*People v. Memro, supra,* 38 Cal.3d at p. 676.) Nor is the five-year limitation of Evidence Code section 1045 for disclosure of complaints or the exclusion of conclusions of investigations of those complaints in police officer records an absolute bar to information sought in the older police officer records in this case. (*City of Los Angeles, supra,* 29 Cal.4th at p. 16.) Rather, the information sought here was impeachment evidence bearing on the credibility of former police officer Torres contained in counseling memos specifically identified by the custodian of Torres's personnel records in an earlier *Pitchess* motion as containing information about Torres's deficiencies in his job as a police officer, which do not appear to fall under a disclosure exclusion of Evidence Code section 1045.

In light of finding an abuse of discretion, we grant Abatti's petition, directing the trial court to vacate its April 18, 2003 order denying his hybrid *Pitchess/Brady* motion and to conduct an in camera review of the counseling memos in Torres's police officer records in accordance with the procedures set forth in *Mooc, supra,* 26 Cal.4th 1216, 1228–1229, to ascertain whether they contain information required to be disclosed to Abatti under *Brady.*

## DISPOSITION

Let a writ issue directing the superior court to vacate its order of April 18, 2003, and to conduct an in camera review of the counseling memos of former police officer Torres consistent with the views expressed in this opinion. This decision will become final as to this court 10 days after it is filed. (Cal. Rules of Court, rule 24(b).)[9] At that time, the stay issued by this court on May 7, 2003, will be vacated.

McDonald, J., and McIntyre, J., concurred.

A petition for a rehearing was denied September 29, 2003, and the petition of real parties in interest for review by the Supreme Court was denied November 12, 2003.

---

[9] See *Ng v. Superior Court* (1992) 4 Cal.4th 29, 34 [13 Cal.Rptr.2d 856, 840 P.2d 961].