Filed 6/23/16  P. v. Boatwright CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GARY DEAN BOATWRIGHT,<br><br>    Defendant and Appellant. | B260654<br><br>(Los Angeles County<br>Super. Ct. No. BA412916) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William N. Sterling, Judge.  Affirmed.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Andrew S. Pruitt, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Gary Dean Boatwright appeals from the judgment entered following his convictions by jury on two counts of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) The court suspended imposition of sentence and placed appellant on probation for three years on the condition, inter alia, he serve 365 days in local custody (time served). The appeal arises out of appellant's "Notice of Motion and Pretrial *Pitchess*[1] Motion" (pretrial *Pitchess* motion) seeking to discover complaints of alleged misconduct in the personnel files of three police officers (Los Angeles Police Officer Joseph Dudas, Los Angeles Police Officer Quintero, and Los Angeles Police Detective M. Ceja). Consistent with Evidence Code section 1045, subdivision (b)(1) (excluding discovery of complaints more than five years before the event), the trial court reviewed personnel records, in camera, for complaints against Dudas and Quintero lodged within the past five years. We find no error in the court's in camera review or its limitations on the categories of documents and information properly discoverable under *Pitchess*.

Appellant's pretrial *Pitchess* motion also rested on *Brady*.[2] Although requests for *Brady* information are not governed by the five-year limitation in Evidence Code section 1045, subdivision (b)(1), the trial court's failure to conduct an in camera review of records beyond the five-year limit was not error because appellant only requested in camera review of information under section 1045, subdivision (a) and, in any event, he failed to make the requisite prima facie showing that the officers' files contained information that was "material" under *Brady*. We affirm.

---

[1]      *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]      *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215] (*Brady*).

1. *Officer Dudas Was the Only Police Officer Who Testified for the People at Trial.*

At the time of the June 25, 2013 incident leading to his arrest, appellant was homeless, living in a tent among others occupying an encampment on the sidewalk near Third and Main. At trial, the People called, as witnesses, the alleged victims (two Business Improvement District (BID) safety officers working in downtown Los Angeles); a third-party witness who saw the alleged assault from across the street (Oscar Lopes); and Dudas, one of the arresting Los Angeles police officers.

Joshua Quezada, a BID safety officer in downtown Los Angeles, was the first officer to contact appellant on the day in question. Quezada testified that about 9:30 a.m. on June 25, 2013, he noticed appellant's tent was blocking the sidewalk. Quezada approached and asked appellant to pick up his belongings so the area could be cleaned. Appellant was agitated and hostile. Appellant was also holding a knife with an approximate eight-inch blade. Quezada testified the knife later confiscated from appellant's tent appeared to be the knife wielded by appellant on the day in question.

According to Quezada, appellant lunged at Quezada's stomach, saying, "I'm going to cut you." Quezada tried to retreat but appellant grabbed Quezada's bicycle, preventing him from leaving. Appellant jabbed the knife toward Quezada several times before releasing the bicycle. Quezada fled on his bicycle to an area of safety, then telephoned his supervisor, Raul Lua, to let him know what happened. Later that day, Quezada told police what happened. Quezada testified the police report accurately memorialized what he told the police.

BID Safety Officer Raul Lua, the supervisor who received Quezada's call, testified that when he arrived at the encampment, he approached appellant and politely asked how he was doing. Appellant spoke aggressively to Lua saying, "Leave me alone or I'm going to cut you like I cut your cousin." Lua testified he retreated after appellant pointed a knife at him and advanced towards him. Later that day, Lua told police what happened.

A man who was working across the street from the encampment, Oscar Lopes, testified he was cleaning a garden near Third and Main that morning. Lopes looked across the street and saw appellant chasing a BID officer. Lopes heard appellant say, "I'm sick and tired of you guys coming and waking us up every morning." Lopes noticed appellant was carrying what looked like a machete. Lopes was concerned appellant was going to stab the BID officer. Lopes testified appellant was very angry and chased the BID officer away. When another BID officer arrived, appellant became angry and said, "I'm sick and tired of this." Lopes saw appellant chase the second BID officer away, thrusting the knife and nearly stabbing the officer.

Lopes testified a police officer took a statement from him. A police report correctly reflected Lopes told an officer that Lopes "went to investigate and observed the suspect with a large knife in hand, in a threatening manner approaching one of the victims." Lopes similarly confirmed a second statement he made to Ceja as reflected in Ceja's police report.

One of the three police officers who were the subject of appellant's pretrial *Pitchess* motion testified at trial. Dudas testified he and his partner, Quintero, arrived at the encampment about 10:00 a.m. and appellant was present. Dudas identified photographs of the encampment at trial. He also testified he recovered a knife from appellant's tent. Dudas produced the knife at trial and testified its blade was about eight inches long. When Dudas interviewed Quezada and Lua, they identified the knife as the one appellant had pointed at them.

Dudas testified there were several other people present in the area at the time of the arrest but none indicated they saw anything. Dudas also testified Quintero spoke to a person across the street. When asked whether Dudas's "partner went and looked for [witnesses]," Dudas testified his partner "was speaking with the witness." Dudas also testified there were "quite a few" potential witnesses, "people living on both sides . . . as well as people over by the tree."

4

2. *Appellant Did Not Call Any of the Three Officers to Testify at Trial.*

Appellant testified in his own defense at trial.  Because he was representing himself, the testimony was in the form of a narrative.  Appellant explained that before the BID officers arrived, he and others were preparing to cook eggs using a two-burner stove chained against the fence.  He testified, "And so I was – we were gathering . . . cooking utensils together.  And I was going to be cutting the bread and veggies and doing some of the prep work. . . .  [¶]  [Mr. Lua] the first purple shirt [BID officer]" tugged on appellant's tent.  Appellant testified, "I told them to go away," "[a]nd . . . I had the knife in my hand," "[s]o I came around.  And I shook it and waved it over his head like this and gestured with it."  He also testified, "I was cutting bread with the bread knife.  And that's why I had it out.  And that's why I had it in my hand. . . .  At no time, did I try to lunge, did I try to jab, did I chase anyone.  And . . . I don't know why they are making this story up. . . .  [¶]  And here again, . . . there's all kinds of crazy inconsistencies in their story besides the knife and the lunging."  Appellant admitted to being loud and belligerent when the BID officer told him to take down the tent.

Appellant testified that, later, "Officer[s] Dudas and Quintero showed up."  While Quintero handcuffed appellant, Dudas went back into the tent and "came out with the bread knife, which is the one I had been gesturing with, and accused [me] of lunging and jabbing and chasing with [it.]"

On cross-examination, the prosecutor did not ask appellant about police reports other than to ask whether, when he talked to Ceja, appellant used certain pejorative epithets to refer to the BID officers.  Appellant responded he did not recall.

Appellant called Mama Wade to testify at trial.  She was living in the area of the encampment at the time of the incident and provided a written statement to the police (apparently to Ceja) and a second statement to a defense investigator.  After obtaining a stipulation from both sides, the court read both statements to the jury.  Wade then testified the statements read by the court were the statements she had written.  In her statement to Ceja, Wade reported that after a "purple [shirt]" came to tell appellant something, appellant "started talking in a loud voice.  He got up and had a long knife and

5

told the person to go get the police. He threatened the person with the knife . . . the incident ended [when he] [appellant] went back to his campsite." In Wade's statement to Jaime Martinez, appellant's investigator, Wade said, "[Appellant] shook the knife threateningly to young men, but he did not hit them. He did not come out of his tent area at them, but he went back in."

Mary Jane Haywood testified she was with appellant in his tent when a BID officer approached appellant and told him to exit. Haywood denied appellant had a knife, and Haywood stated that, when the officer returned in 10 minutes, the officer said appellant had threatened him with a knife. She also denied appellant chased the officer. She testified appellant did not exit the tent. Haywood did not remember telling an investigator that appellant held the knife over his head, waved it about, but did not try to assault anyone.[3] Haywood also testified she never spoke to the police or gave a statement about the incident.

3. *The Trial Court Denied Appellant's Request to Order the People to Produce Officer Ceja to Testify at Trial*

Appellant asked the court to have the prosecution produce Ceja for "impeachment testimony" even though appellant had not subpoenaed Ceja. When the court asked why Ceja's testimony was relevant, appellant explained he had a problem with Lopes's testimony because "it does not appear to be accurate and he didn't tell anybody else that." The prosecutor pointed out there were exactly six lines in Ceja's report referencing Lopes, namely, "Mr. Lopes stated that he was across the street when he saw the defendant come out of his tent with a knife and try to cut one of the guys with the shirts. Witness Lopes sounded very rushed and said he was unable to stay on the phone at this time. I advised he might be needed for court. He responded, '[O]kay. Just call me.' " The court then refused appellant's request, commenting, "I don't see how [making her come in] could help [appellant]."

---

[3] In rebuttal, Martinez testified Haywood told Martinez that Haywood saw appellant waving the knife over his head and appellant "was holding a bread knife in his hand but did not attempt to assault" security personnel.

4. *All Three Officers Prepared Police Reports.*

The record includes police reports prepared by all three officers. Quintero's police report memorialized what Quintero found when he arrived at the scene on June 25, 2013 and what Quezada, Lua, and Lopes told Quintero about the incident. It also notes, "Officers searched the surrounding area for additional [witnesses] with negative results" but further investigation revealed Lopes "observed [appellant] with a large knife in hand in a threatening manner approaching one of the Victims."

Ceja's report memorialized statements she obtained from Quezada, Lua, Wade, and Lopes. It also incorporates statements from Ceja's June 25, 2013 interview of appellant at the police station. Ceja reported that on June 25, 2013, appellant "admit[ted] that he yelled very loudly, rudely, obscenely and menacingly at each victim, individually, when he was approached." The report also states, "[Appellant] first stated that he did have a knife in his hand when he confronted . . . Quezada yet [appellant] insists that it was because he was having breakfast and cutting bread. . . . [Appellant] states that he never threatened to cut or stab anyone. Later during this interrogation [appellant] agreed to make a written statement and attempted to change his oral statement and say/write that he did not have a knife in his hand when he yelled at victims. [Appellant] stated that he did threaten to 'shove' the [victims] but never threatened to cut or stab the victims." Ceja indicated that, during the interview, appellant made derogatory statements about the BID officers, and "[appellant] made these statements orally as he wrote a statement and continued to change his story regarding the knife. He became loud [and] argumentative and at this point I ended this interrogation."

The record also contains appellant's written statement to Ceja, describing what happened when the first and then the second BID officer arrived at appellant's location, without any mention of the knife. Later in the statement, after describing his encounter with the second BID officer, appellant suggested, "Maybe the 1st or 2nd annoying little [BID officer] faggot in a purple shirt saw the bread knife I was planning on using to slice bread for bacon and eggs."

7

1. *Appellant's Pitchess/Brady Motion.*

Appellant's October 8, 2013 pretrial *Pitchess* motion sought information from the personnel files of Dudas, Quintero, and Ceja.[4] Specifically, it requested "[r]ecords and information and statements regarding any complaints of prejudice, unnecessary force, false arrest, unlawful search, and seizure, dishonesty, abuse of authority, violation of civil rights under color of law and any other conduct which constitutes a violation of law or other policies of the [LAPD]" and asked for contact information for any witnesses to such misconduct.

The pretrial *Pitchess* motion cited *Pitchess* and other cases construing Evidence Code section 1045, subdivision (a), as support for eight of the nine categories of information requested. The ninth request sought "any *Brady* material revealed by an in camera inspection of said personnel files and the information requested [elsewhere in the motion]." In his points and authorities supporting the motion, appellant acknowledged "*Brady's* constitutional materiality standard is narrower than the *Pitchess* requirements" and "if a defendant meets the good cause requirements for *Pitchess* discovery, any *Brady* material in an officer's file will necessarily be included."

Appellant submitted a supporting declaration that declared, among other things, Quintero lied in his police report (falsely stating " '[o]fficers searched the surrounding area for additional [witnesses] with negative results' "). Appellant argued this statement was false because the officers overlooked his neighbors, "Larry and Mary" and turned instead to "a witness across the street." Appellant also accused Ceja of lying in her

---

[4] On January 9, 2014, the Los Angeles Police Department (LAPD) received a second such motion from appellant. It requested the discovery of the same information and items as the first motion. The January 9, 2014 motion has no stamp or other marking indicating it was ever formally filed or lodged with the trial court. However, the trial court permitted the Los Angeles city attorney, representing LAPD, an opportunity to file, and the city attorney filed, an opposition to the second motion. We treat both documents as one motion.

follow-up investigation when she said appellant " 'attempted to change his oral statement and say/write that he did not have a knife in his hand when he yelled at victims.' "

Appellant also implied the arrest involved collusion between the BID officer victims and the arresting and investigating officers. He pointed out "[t]his arrest for the current allegations is the second false arrest of defendant Boatwright in the month of June by the LAPD at the exact same location under nearly identical circumstances." According to appellant, "the first arrest [a D.A. reject] . . . was by Officer Rice and his partner and was a result of false allegations by two purple shirts [BID officers]."[5]

The declaration raised questions about two occasions when Dudas visited the location between June 7, 2013 and June 25, 2013. Regarding the first visit, appellant stated, "[i]n retrospect it appears likely [Officer] Dudas was casing the location for the purpose of instigating a second false arrest." Regarding the second visit, appellant recounted Dudas "accused one of the regulars [McDonald] at 3rd and Main falsely of having an open container" and "threatened to arrest [McDonald]."[6]

Based on the statements in his declaration, appellant argued he had "made a prima facie showing of false arrest on both June 7th and June 25th that raises the specter of a pattern and practice of . . . a specious citizen's arrest complaint by a [BID officer] that results in a false arrest . . . ." The declaration asserted, "trial in this matter will be determined on the credibility of the arresting and investigating officers and any evidence of misconduct by those officers will be vital to the defense of [the] case."

---

[5]     The police report for the June 7, 2013 arrest identifies the victim as BID officer Steven Ulloa and the arresting officers as officers Rice and Guizar. According to the report, Ulloa accused appellant of holding a hammer above his head, charging at Ulloa with the hammer, and stating, " 'I'm going to kill you!' " Nothing in the report indicates the victims or officers involved in the June 25, 2013 arrest had anything to do with the June 7, 2013 arrest.

[6]     According to appellant, on this second occasion, Dudas was accompanied by a Black Los Angeles police officer. McDonald, a Black man, called Dudas a racist, Dudas's partner took exception to the remark, and Dudas threatened to arrest McDonald.

9

2. *The February 6, 2014 Pretrial Pitchess Motion Hearing and Court's Ruling.*

During the February 6, 2014 hearing on appellant's pretrial *Pitchess* motion, the court told appellant, "the most you will get at this stage would be contact information from witnesses who have made complaints, within the applicable period, against these officers." The court inquired how Ceja's opinion appellant "changed his story" could be evidence of misconduct, indicating it was "not inclined" to grant the motion as to Ceja. Appellant responded, "Okay. Well, that's acceptable" but complained Ceja's report contained "blatant lie[s]," accused appellant of "hate crime for some names I called [the BID officers] about their sexual identity" and made it "appear as if I'm guilty or being dishonest." Appellant told the court he had never changed his story explaining, "I never said at any point that I did not have a knife, because I had it to cut bread." The court denied appellant's request to discover Ceja's records, and indicated Ceja's opinion was harmless "if you have a statement that shows what you actually said."

The court granted appellant's pretrial *Pitchess* motion but only as to complaints against Dudas and Quintero for "[f]abrications of probable cause and false reports only." The court told appellant, "you understand that the complaints are limited, by law, to a period of five years from the date of the incident."

3. *The February 7, 2014 In Camera Hearing and Ruling.*

The February 7, 2014 minute order reflects that, on that date, the court conducted the *Pitchess* in camera hearing with the records custodian, "[n]o discovery [was] ordered," and the court ordered sealed the reporter's notes of the in camera hearing. On October 28, 2015, this court augmented the record on appeal with the sealed transcript of the February 7, 2014 in camera hearing proceedings.[7]

---

[7]     Neither Quintero nor Ceja testified at trial.

10

## APPLICABLE LAW

1. *Pitchess Motions.*

In 1978, "the California Legislature 'codified the privileges and procedures surrounding what had come to be known as "*Pitchess* motions" . . . through the enactment of Penal Code sections . . . and Evidence Code sections 1043 through 1045.' [Citations.]" (*City of Los Angeles v. Superior Court* (*Brandon*) (2002) 29 Cal.4th 1, 9 (*City*).)

In *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, our Supreme Court observed that, to initiate discovery under a *Pitchess* motion, the defendant must file a motion supported by affidavits showing good cause for the discovery. This means demonstrating the materiality of the information to the pending litigation and stating upon reasonable belief that the police agency has the records or information. This two-part showing is a " 'relatively low threshold for discovery.' " (*Id.* at p. 1019.)

*Warrick* teaches that, to satisfy the materiality part of the good cause requirement, defense counsel's affidavit must, inter alia, "describe a factual scenario supporting the claimed officer misconduct." (*Warrick, supra,* 35 Cal.4th at p. 1024.) *Warrick* concluded "a plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.) *Warrick* stated, "What the defendant must present is a specific factual scenario of officer misconduct that is plausible." (*Id.* at p. 1025.) *Warrick* also stated, "A defendant must also show how the information sought could lead to or be evidence potentially admissible at trial. Such a showing 'put[s] the court on notice' that the specified officer misconduct 'will likely be an issue at trial.' [Citation.] Once that burden is met, the defendant has shown materiality under section 1043." (*Warrick,* at p. 1026.)

"If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance.  [Citations.]  The trial court may not disclose complaints more than five years old, the 'conclusions of any officer' who investigates a citizen complaint of police misconduct, or facts 'so remote as to make [their] disclosure of little or no practical benefit.'  ([Evid. Code,] § 1045, subd. (b); [citation].)"  (*Warrick*, *supra,* 35 Cal.4th at p. 1019.)

The court may deny a *Pitchess* motion to the extent its request for information is overly broad.  (Cf. *Warrick, supra,* 35 Cal.4th at 1027; *People v. Hill* (2005) 131 Cal.App.4th 1089, 1096, fn. 7 (*Hill*); see *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 (*CHP*).)  "This specificity requirement excludes requests for officer information that are irrelevant to the pending charges.  [Citation.]  And it enables the trial court to identify what types of officer misconduct information, among those requested, will support the defense or defenses proposed to the pending charges.  This inquiry establishes the statutorily required materiality prong of the good cause showing that a defendant must make to receive in-chambers review of potentially relevant officer records."  (*Warrick*, at pp. 1021-1022.)

We review a trial court's ruling on a *Pitchess* motion for abuse of discretion.  (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

2.  *Brady v. Maryland.*

In *People v. Salazar* (2005) 35 Cal.4th 1031 (*Salazar*), our Supreme Court, discussing *Brady v. Maryland, supra,* 373 U.S. 83, stated, " 'There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'  [Citation.]  Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt or innocence.'  [Citations.]"  (*Salazar,* at p. 1043.)

"[I]n determining whether evidence was material, 'the reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case.' [Citation.]" (*In re Steele* (2004) 32 Cal.4th 682, 701.) "[T]he evidence's materiality ' "must be evaluated in the context of the entire record." ' [Citation.] In deciding whether asserted *Brady* evidence is material to defendant's case, it is therefore appropriate to examine the effect of the evidence on the actual . . . proceeding in which defendant was tried." (*People v. Hoyos* (2007) 41 Cal.4th 872, 919-920.) Materiality requires a defendant to show a reasonable probability of a different result (*Salazar, supra,* 35 Cal.4th at p. 1043), i.e., the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Kyles v. Whitley* (1995) 514 U.S. 419, 435 [131 L.Ed.2d 490, 506] (*Kyles*).)

"If the undisclosed evidence is 'material,' the defendant's conviction must be vacated without a separate harmless error review, because the prejudice determination is subsumed within the definition of the term 'material.' [Citation.]" (*In re Brown* (1998) 17 Cal.4th 873, 903.)

3. *Pitchess Motions and Brady.*

In *City,* the defendant, like appellant, filed a hybrid *Pitchess*/*Brady* motion. The trial court granted the defendant discovery of information concerning an incident that occurred beyond the five-year limit of Evidence Code section 1045, subdivision (b)(1).[8] (*City, supra,* 29 Cal.4th at pp. 5-6.) Our Supreme Court addressed the interplay between *Pitchess* and *Brady*. (*Id.* at p. 7.) The court noted, "Because *Brady's* constitutional materiality standard is narrower than the *Pitchess* requirements, any citizen complaint

---

[8] Evidence Code section 1045, subdivision (b)(1), states, "In determining relevance, the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought."

13

that meets *Brady's* test of materiality necessarily meets the relevance standard for disclosure under *Pitchess*.  ([Evid. Code,] § 1045, subd. (b).)"  (*City*, at p. 10.)

The " 'relatively relaxed standard' " (*Warrick, supra*, 35 Cal.4th at p. 1016) of good cause of the *Pitchess* statutory scheme is the sole threshold a defendant must meet to obtain in camera review of personnel records pursuant to a hybrid *Pitchess/Brady* motion where the defendant is seeking information to which the defendant is *statutorily* entitled under Evidence Code sections 1043 and 1045, including *Brady* information that falls within the five-year limit of Evidence Code section 1045, subdivision (b)(1).  More recently, in *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696 (*Johnson*), our Supreme Court stated, "because the ' . . . " '*Pitchess* process' operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information,' " all information that the trial court finds to be exculpatory and material under *Brady* must be disclosed, notwithstanding Evidence Code section 1045's limitations."  (*Johnson*, at p. 720; accord, *Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 60 (*Abatti*).)

## *DISCUSSION*

Appellant claims the trial court violated state law and his right to due process by denying, in part, his hybrid *Pitchess*/*Brady* motion.  He takes issue with the trial court's failure to order discovery as to any acts of dishonesty by Ceja, failure to order disclosure of disciplinary results for any misconduct for all three officers, and failure to include *Brady* material (for complaints against the officers more than five years prior to the arrest) in the in camera inspection.  Appellant also asks this court to conduct an independent review of the in camera *Pitchess* hearing in this case.

1. *The Trial Court's Rulings on Appellant's Requests for Pitchess Discovery Were Not an Abuse of Discretion.*

a.  The Trial Court Properly Denied Discovery of Ceja's Personnel Records under *Pitchess*.

The trial court determined Ceja's opinion appellant had "changed his story" about the knife was not a plausible basis for misconduct and denied the *Pitchess* motion on that basis.  Ceja's statement appellant "changed his story" is supported by the record.

14

Although appellant admitted, at trial, he was holding a bread knife when the BID officers arrived, one of his written statements recounting his encounters with the two BID officers makes no mention of any knife. The trial court did not abuse its discretion by concluding that Ceja's report provided no plausible basis for misconduct.

The trial court was permitted to employ common sense in its plausibility determination and to make a reasonable and realistic assessment of the facts (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318-1319). We review a trial court's ruling, not its reasoning. (Cf. *People v. Mason* (1991) 52 Cal.3d 909, 944; *Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 368.) In order to conclude a trial court abused its discretion, we must conclude the court's action was irrational, capricious, or patently absurd (cf. *People v. Delgado* (1992) 10 Cal.App.4th 1837, 1845; *In re Arthur C.* (1985) 176 Cal.App.3d 442, 446) and without even a fairly debatable justification (*People v. Clark* (1992) 3 Cal.4th 41, 111). We cannot conclude that here.

b. The Court Properly Denied Appellant's Overly Broad Requests for *Pitchess* Discovery.

Appellant argues the trial court abused its discretion by not ordering the disclosure of LAPD disciplinary results for any of the three officers arising out of *any* complaint of misconduct. In this regard, appellant points out his pretrial *Pitchess* motion asked for information about any discipline imposed by LAPD for misconduct by any of the three officers arising out of "any complaints of prejudice, unnecessary force, false arrest, unlawful search, and seizure, dishonesty, abuse of authority, violation of civil rights under color of law and any other conduct which constitutes a violation of law or other policies of the [LAPD]."

However, appellant's request for information about discipline arising from "complaints of prejudice, unnecessary force, . . . unlawful search, and seizure, . . . abuse of authority, violation of civil rights under color of law and any other conduct which constitutes a violation of law or other policies of the [LAPD]" was overly broad because appellant's prima facie showing (alleged lies in the police reports and false arrests) only supported discovery in connection with any fabrications of probable cause and false

15

reports by the arresting officers (Dudas and Quintero). (Cf. *Warrick, supra,* 35 Cal.4th at pp. 1022, 1027; *Hill, supra,* 131 Cal.App.4th at p. 1096, fn. 7; see *CHP, supra,* 84 Cal.App.4th at p. 1021.) The court therefore properly granted the motion as to "[f]abrications of probable cause and false reports only." Appellant's more generalized request for information about the officers' alleged "dishonesty" was not supported by appellant's limited showing (cf. *CHP,* at pp. 1022-1024) and, as indicated, appellant failed to describe a plausible factual scenario of dishonesty as to Ceja. The trial court therefore did not abuse its discretion to the extent it denied appellant's request for *Pitchess* information from the personnel records of the three officers pertaining to categories other than "fabrications of probable cause and false reports."

2. *The Trial Court's Failure to Review Personnel Records for Complaints Beyond the Five-Year Limit Was Not Error.*

Appellant argues the trial court's ruling on his pretrial *Pitchess* motion omitted any reference to his request for *Brady* material and the trial court thereby "unlawfully precluded appellant from discovering possible (and highly-relevant) *Brady* material specified" in his motion. Appellant is correct the trial court made no reference to appellant's request for *Brady* material. It also appears the trial court believed appellant's motion was constrained by Evidence Code section 1045, subdivision (a)'s five-year limitation on discovery for *Pitchess* motions. During the February 6, 2014 hearing on the motion, the court told appellant, "the *most* you will get at this stage would be contact information from witnesses who have made complaints, *within the applicable period*, against these officers." (Italics added.) After concluding appellant had made a good cause showing for examination of Dudas's and Quintero's personnel records for "[f]abrications of probable cause and false reports only," the court reminded appellant, "the complaints are limited, by law, to a period of five years from the date of the incident."

16

We agree with appellant the five-year limit on *Pitchess* discovery under Evidence Code section 1045, subdivision (b)(1) does not apply to discovery of *Brady* material. (Cf. *Abatti, supra,* 112 Cal.App.4th at p. 60; see *Johnson, supra,* 61 Cal.4th at p. 720; *City*, *supra,* 29 Cal.4th at p. 13.) We conclude, however, the court had no obligation to conduct an in camera inspection of records beyond the five-year limit of section 1045, subdivision (b)(1) as to any of the three officers because appellant failed to request in camera review of information outside that limit and failed to make a preliminary showing that any of the three officers' files contained evidence material to appellant's defense.

a. Appellant's Motion Only Requested In Camera Review of Personnel Records Discoverable Within the Five-Year Limit of Evidence Code section 1045.

Citing *Pitchess* or its progeny, appellant's motion asked the trial court to conduct an in camera inspection for records or information responsive to eight categories of requests. The ninth request was for "[a]ny *Brady* material revealed by an in camera inspection of said personnel files and the information requested above" referring to the first eight items of discovery requested under *Pitchess.*

This language asked the court to review the personnel records discoverable under *Pitchess* for any additional *Brady* material.[9] It did not communicate a request to review additional files not discoverable under *Pitchess* such as complaints beyond the five-year limit. Because the motion did not request in camera review of any files beyond the files discoverable under Evidence Code section 1045, subdivision (a), the trial court did not err in failing to search for files outside the section 1045, subdivision (b)(1) five-year limit.

---

[9]    The trial court, having found under *Pitchess's* " 'relatively relaxed standard' " (*Warrick, supra*, 35 Cal.4th at p. 1016) that appellant had shown good cause as to Dudas and Quintero concerning "fabrications of probable cause and false reports only," necessarily included in that finding any related *Brady* information within the five-year period.

17

b. Appellant Failed to Make a Prima Facie Showing of Materiality under *Brady.*

Assuming appellant's motion requested *Brady* information beyond the five-year limit, we conclude it was incumbent on appellant to make a prima facie showing that the officers' files contained evidence that was material (for *Brady* purposes) to appellant's defense. As appellant concedes, there is a significant difference between the relatively relaxed standard for materiality under *Pitchess* and materiality under *Brady.* Under *Brady*, the information requested must be favorable to the accused and material to the issue of guilt or innocence; the court must consider whether the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Kyles*, *supra*, 514 U.S. at p. 435.)

"Although *Brady* disclosure issues may arise 'in advance of,' 'during,' or 'after trial' [citation]), the test is always the same. [Citation.]" (*City, supra*, 29 Cal.4th at p. 8.) However, like the case in *Abatti,* in which the defendant, like appellant, filed a hybrid *Pitchess/Brady* motion (*Abatti, supra*, 112 Cal.App.4th at p. 42), "the question before us does not involve the *prosecutorial* duty to disclose" (*id*. at p. 58, italics added), or therefore, *prosecutorial Brady* error. Instead, the issue here is whether the *trial court* violated appellant's "due process right to gain access to material exculpatory evidence for the preparation of a defense." (*Ibid*.) Appellant did not cite any reported California cases deciding the necessary preliminary showing for discovery of *Brady* information pursuant to a hybrid *Pitchess/Brady* motion and we are aware of none.

In *Harrison v. Lockyer* (9th Cir. 2003) 316 F.3d 1063 (*Harrison*), the defendant made a motion, based on due process, seeking discovery of police records, including information beyond the five-year limit. (*Id.* at p. 1065.) The trial court denied the motion beyond the five-year cut-off. (*Ibid*.) In an opinion issued shortly after the California Supreme Court's decision in *City,* the Ninth Circuit reviewed de novo the trial court's denial. In affirming the trial court's denial of discovery beyond the five-year limit, the Ninth Circuit noted, "we are not instructed [in *City*] on how a defendant in a criminal case will know, or be able to make, a preliminary showing that a police personnel file contains evidence material to his defense. But we are clear that the

18

California Supreme Court has faithfully followed the United States Supreme Court.  In our case, Harrison made no *showing* that [the arresting officer's] file *contained complaints material to his defense*.  Therefore [appellant] was not denied due process when he was denied access to material more than five years old."  (*Id.* at p. 1066, italics added.)

The Ninth Circuit concluded the defendant had a due process right to judicial review of police records for information that was "material" for purposes of *Brady*, but only if, prior to that review, the defendant made a preliminary showing the officer's file actually contained complaints "material" (for *Brady* purposes) to the defendant's defense. (*Harrison, supra*, 316 F.3d at pp. 1065-1066; *City, supra*, 29 Cal.4th at p. 15.)  Following the reasoning of *Harrison*, we likewise affirm because appellant made no preliminary showing the personnel records of any of the three officers "contained complaints material to his defense." (*Harrison*, at p. 1066.)  We do not suggest appellant was required to show the prosecutor (or the trial court) for purposes of *Brady*, "suppressed" information that was "favorable" and "material."  Instead, we conclude appellant failed to make a *prima facie* showing that the officers' files contained information that was "material" for purposes of *Brady*, the showing required before appellant had a *due process* right to *judicial review* of the file for such information.

Appellant also failed to make a prima facie showing that, even if the personnel files contained relevant impeachment evidence against the three officers, the files would contain impeachment evidence that would be, for *Brady* purposes, "material" in his case. That is, appellant has failed to make a prima facie showing the officers' "credibility [was] the major issue in [his] case [or that the] evidence at trial [would] consist of opposing stories presented by the defense and the prosecution witnesses.  (See *Giglio v. United States* (1972) 405 U.S. 150, 154 [31 L.Ed.2d 104, 108, 92 S.Ct. 763, 766]; *Napue v. Illinois* (1959) 360 U.S. 264, 269 [3 L.Ed.2d 1217, 1221, 79 S.Ct. 1173, 1177]; *United States v. Kiszewski* (2d Cir. 1989) 877 F.2d 210, 216.)"  (*Abatti, supra*, 112 Cal.App.4th at p. 52.)  There is no evidence that, at the time of appellant's pretrial *Pitchess* motion, the People identified any of the three officers as key witnesses.  Appellant's contention

19

"any evidence of misconduct of these officers will be vital to the defense" was not borne out by the facts of the underlying incident. The officers were not percipient witnesses. Because they arrived at the scene of the assault after the fact, they were not in a position to present an "opposing story" bearing on appellant's innocence or guilt. Therefore, appellant failed to make a prima facie showing that their direct testimony or any impeaching testimony elicited during cross-examination would be "material" at trial under *Brady*.

Appellant also failed to make a prima facie showing that there was any factual basis for impeaching any of the three officers. Appellant asked the court to infer collusion and dishonesty between the BID officer victims (Quezada and Lua) and the three arresting officers (Dudas, Quintero, and Ceja) based on an entirely different arrest on a different date involving a different BID officer victim and different investigating and arresting police officers. Although appellant declared the circumstances of his arrest on June 7, 2013 by officers Rice and Guizar for allegedly threatening BID officer Ulloa with a hammer was "in the same location under nearly identical circumstances," he provided no evidence the June 7, 2013 arrest was a "false" arrest. He did not, for example, deny threatening BID officer Ulloa with a hammer that day or provide evidence the officers were in collusion. Even if appellant had provided such evidence, it would not have given rise to any inference of collusion among the different victims and the three officers involved in the June 25, 2013 matter.

Certainly, the specific statements appellant identified as "lies" in the police reports were not material to the issues of innocence and guilt. Ceja's statement, in her report, that appellant "changed his story" was a matter of opinion rather than fact and was supported by the documents she reviewed. Her opinion did not support an inference she falsified any facts. Appellant's allegation Dudas once falsely accused another person in the area of having an open container without arresting that person was not evidence Dudas made a false arrest. The officers' allegedly false statements in police reports that they searched the area of appellant's arrest for additional witnesses with unsuccessful results was not material to innocence or guilt. The adequacy of the officers' investigation

20

for third-party witnesses in an after-the-fact investigation of a crime is not relevant to any element of appellant's crime or any defense.

Without a prima facie showing the officers' files contained evidence that was "material" under *Brady*, there was no reason for the trial court to review personnel records for *Brady* information and the trial court's failure to do so was not error.

3. *Further In Camera Review by the Trial Court Is Unnecessary.*

Appellant claims this court should review the sealed transcript of the February 7, 2014 in camera hearings on his *Pitchess/Brady* motion to determine whether any police personnel records were erroneously withheld. Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827 (*Samayoa*); *People v. Memro* (1995) 11 Cal.4th 786, 832.)

We have reviewed the contents of the sealed transcript of the February 7, 2014 in camera hearing. The transcript constitutes an adequate record of the trial court's review of any document(s) provided to the trial court during the in camera hearing, and said transcript fails to demonstrate the trial court abused its discretion or erred by failing to disclose any information (cf. *Samayoa, supra,* 15 Cal.4th at p. 827; see *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230, 1232) that fell within the five-year limit of Evidence Code section 1045, subdivision (b)(1), whether *Brady* information or otherwise. The trial court fulfilled its responsibilities under *Pitchess* and *Brady* to the extent appellant sought information to which he was statutorily entitled, including any *Brady* information that fell within the above five-year limit.

As noted above, the trial court's failure to review the three officers' personnel files for information or complaints dating more than five years prior to the arrest was not an abuse of discretion or error.

## *DISPOSITION*

The judgment is affirmed.


HOGUE, J.[*]

We concur:


EDMON, P. J.


ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.